**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

CHRISTINA LACHAPELLE, individually
and on behalf of all others similarly situated,

    Plaintiff,

  v.

TIME INC. et al.,

    Defendants.

)
)
)
)
) Civil Action No. 18-cv-00535-WES-PAS
)
)
)
)
)

**REPLY MEMORANDUM OF DEFENDANTS IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)</u>**

Jeffrey G. Landis (*pro hac vice*)
Zachary Lerner (*pro hac vice*)
ZWILLGEN PLLC
1900 M St. NW, Ste 250
Washington, DC 20036
jeff@zwillgen.com
zach@zwillgen.com
Tel: (202) 296-3585
Fax: (202) 706-5298

Elizabeth McDonough Noonan (R.I. Bar # 4226)
Michael A. D'Ippolito III (R.I. Bar # 9729)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
enoonan@apslaw.com
Tel:  (401) 274-7200
Fax:  (401) 351-4607

*Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... ii

THE UNCHALLENGED BACKGROUND TO THIS MOTION .................................................3

ARGUMENT ...............................................................................................................................5

    I.    Plaintiff's Reading of the RI VRPA to Encompass Publications Impermissibly
        Expands and Rewrites Plan Text...................................................................................5

        A.    The Act's Heading Cannot Take the Place of Statutory Text ............................7

        B.    "Or the Like" Cannot Sweep Written Materials into the Statute .......................8

        C.    Reference to "Libraries" and "Book Stores"—Where Audtiovisual Material is
                Also Found—Cannot Expand the Statute's Reach to Include the Written
                Material That the Legislature Deliberately Removed .......................................12

    II.    Unable to Distinguish Controlling Authority That Prohibits Plaintiff from Reading
        the RI VRPA to Reimport What the Legislature Took Out, Plaintff Misstates the
        Law...............................................................................................................................15

    III.  Plaintff's Reading of the Statute to Reimport Publications Contravenes the Rule of
        Lenity...........................................................................................................................21

    IV.  Plaintiff's Tag-Along Unjust Enrichment Claim Fails As a Matter of Law .............23

CONCLUSION............................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Local Union 26,*
  895 F.3d 141 (1st Cir. 2018) ............................................................................15

*Austin-Spearman v. AARP and AARP Services Inc.,*
  119 F. Supp. 3d 1 (D.D.C. 2015) .....................................................................25

*Bernardino v. Barnes & Noble Booksellers, Inc.,*
  No. 17-cv-4570, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) ......................11

*Bisbano v. Strine Printing Co.,*
  737 F.3d 104 (1st Cir. 2013) ............................................................................24

*Boelter v. Hearst Commc'ns, Inc.,*
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................................5

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.,*
  331 U.S. 519 (1947) ...........................................................................................7

*Casperson v. AAA S. New. Eng.,*
  No. PC 2014-6139, 2015 R.I. Super. LEXIS 149 (R.I. Super. Ct. Dec. 22, 2015) ............23

*Chickasaw Nation v. United States,*
  534 U.S. 84 (2001) .......................................................................................7, 16

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001) ...........................................................................................8

*Coulter-Owens v. Rodale, Inc.,*
  No. 14–12688, 2015 WL 575004 (E.D. Mich. Feb. 11, 2015) .........................24

*Coulter-Owens v. Time Inc.,*
  695 F. App'x 117 (6th Cir. 2017) .....................................................................21

*Coulter-Owens v. Time, Inc.,*
  Case No. 12-CV-14390, 2016 WL 612690 (E.D. Mich. Feb. 16, 2016) ...........25

*Deckers Corp. v. United States,*
  532 F.3d 1312 (Fed. Cir. 2008) .......................................................................8, 9

*Diamond v. U.S. Agency for Int'l Devel.,*
  108 F.3d 312 (Fed. Cir. 1997) ..........................................................................11

*Estate of Eglee*,
    383 A.2d 586 (R.I. 1978) .............................................................................6, 9-10, 15-16

*First Republic Corp. of Am. v. Norberg*,
    358 A.2d 38 (R.I. 1976) ...........................................................................................8

*Fontes v. City of Cent. Falls*,
    660 F. Supp. 2d 244 (D.R.I. 2009).........................................................................20

*Goncalves v. Reno*,
    144 F.3d 110 (1st Cir. 1998) ........................................................................... 19-20

*Gordon v. Chipotle Mexican Grill, Inc.*,
    344 F. Supp. 3d 1231 (D. Colo. 2018).................................................................25

*Grasso v. Raimondo*,
    177 A.3d 482 (R.I. 2018) ................................................................................ 17-18

*Green v. Wyman-Gordon Co.*,
    664 N.E.2d 808 (Mass. 1996) ......................................................................... 16-17

*Gulf Oil Corp. v. Copp Paving Co.*,
    419 U.S. 186 (1974)...............................................................................................20

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)..................................................................................................9

*Hauser v. R.I. Dep't of Corr.*,
    640 F. Supp. 2d 143 (D.R.I. 2009)........................................................... 2, 6, 10

*Hazard v. Howard*,
    290 A.2d 603 (R.I. 1972) .....................................................................................11

*Horn v. Southern Union Co.*,
    927 A.2d 292 (R.I. 2007) .....................................................................................19

*Hunter v. Narragansett Elec. Lighting Co.*,
    146 A. 624 (R.I. 1929) .................................................................................... 22-23

*In re Certified Question (Deacon v. Pandora Media)*,
    885 N.W.2d 628 (Mich. 2016)......................................................................... 20-21

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
    725 F.3d 244 (D.C. Cir. 2013) ..............................................................................20

*In re Science Applications International Corp. Backup Tape Data Theft Litigation*,
45 F. Supp. 3d 14 (D.D.C.2014) .......................................................................25

*J. Truett Payne Company, Inc. v. Chrysler Motors Corporation*,
451 U.S. 557 (1981).........................................................................................19

*Jurgens v. Build.com, Inc.*,
4:17-CV-00783-AGF, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) ............................25

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
563 U.S. 1(2011)..........................................................................................22

*Kinder v. Meredith Corp.*,
No. 14–cv–11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) ................................24

*Leocal v. Ashcroft*,
543 U.S. 1 (2004).........................................................................................22

*Mercy Hospital v. Rate Setting Commission*,
407 N.E.2d 337 (Mass. 1980) ................................................................... 16-17

*Multi-State Restoration, Inc. v. DWS Properties, LLC*,
61 A.3d 414 (R.I. 2013) ...................................................................................23

*Murphy v. Smith*,
138 S. Ct. 784 (2018)....................................................................................16, 17

*Orthopedic Specialists v. Great Atl. & Pac. Tea Co.*,
388 A.2d 352 (R.I. 1978) ..............................................................................5, 7

*Passa v. Derderian*,
308 F. Supp. 2d 43 (D.R.I. 2004)  ....................................................................7

*Perlin v. Time, Inc.*,
237 F. Supp. 3d 623 (E.D. Mich. 2017)...........................................................24

*Premier Growth Fund v. Alliance Capital Mgmt.*,
435 F.3d 396 (3d Cir. 2006).............................................................................14

*Reid v. Citizens Sav. Bank/Citizens Trust Co.*,
887 F. Supp. 43 (D.R.I. 1995)...........................................................................5

*Ruiz v. Bally Total Fitness Holding Corp.*,
496 F.3d 1 (1st Cir. 2007)..................................................................................3

iv

*State v. Carter*,
    827 A.2d 636 (R.I. 2003) ................................................................................ 21, 22-23

*State v. Day*,
    911 A.2d 1042 (R.I. 2006) ...................................................................................22

*State v. Dearmas*,
    841 A.2d 659 (R.I. 2004) .....................................................................................9

*State v. DelBonis*,
    862 A.2d 760 (R.I. 2004) .....................................................................................6

*State v. Fuller-Balletta,*
    996 A.2d 133 (R.I. 2010) .....................................................................................5

*State of R.I. v. Narragansett Indian Tribe*,
    19 F.3d 685 (1st Cir. 1994) .................................................................................20

*State v. Smith*,
    766 A.2d 913 (R.I. 2001) ...............................................................................16, 21

*United States v. M.I.M.*,
    932 F.2d 1016 (1st Cir. 1991) ..............................................................................4

*United States v. Thompson/Center Arms Co.*,
    504 U.S. 505 (1992) ...................................................................................... 21-22

*Vaudreuil v. Nalson Engineering & Construction Co.,*
    399 A.2d 1220 (R.I. 1979) ...................................................................................6

*Von Saher v. Norton Simon Museum of Art*,
    592 F.3d 954 (9th Cir. 2010) ..............................................................................14

*Whitman v. Am. Trucking Assn's,*
    531 U.S. 457 (2001) ...........................................................................................18

*Williamson v. Lee Optical of Okla., Inc.*,
    348 U.S. 483 (1955) ...........................................................................................11

*Wilson v. UTC Labs., LLC*,
    CA No. 15-101S, 2017 WL 9324759 (D.R.I. Apr. 27, 2017) ............................24

**Statutes and Rules**

R.I. Gen. Laws § 11-18-1.1 ...........................................................................................21

R.I. Gen. Laws § 11-18-25 ....................................................................................21

R.I. Gen. Laws § 11-18-32 ..........................................................................1, 12, 21

R.I. Gen. Laws § 11-18-33 ....................................................................................21

R.I. Gen. Laws § 11-44-15 ....................................................................................12

R.I. Gen. Laws § 12-25.1-2(3) ..............................................................................10

R.I. Gen. Laws § 14–1–7 .......................................................................................22

R.I. Gen. Laws § 14–1–7.1 ....................................................................................22

R.I. Gen. Laws, § 22-8-1 ..........................................................................................4

P.L. 1983, ch. 296, §4 ............................................................................................13

M.C.L. § 445.1712, *et seq.* .............................................................................. 4-5, 20

## Other Authorities

Garret Condon, "Bookstores Turn Page to Wider Sources of Income,"
 *Hartford Courant* (June 17, 1985) ...........................................................14

Roger R. House III, "Video Retailer Complains Library Rentals Are Unfair,"
 *Providence Journal* (Apr. 3, 1985) ..........................................................14

Oxford English Dictionary (2d Ed. 1989) ............................................................13

Patrick Reilly, "At Waldenbooks, more gets nod over discounting,"
 *Crain's New York Business* (Mar. 10, 1986) ...........................................14

R.I. Department of State Library Services,
 *Minimum Standards for Rhode Island Libraries* (1983)..................... 13-14

R.I. House Bill 88-H 8170 .......................................................................................4

Antonin Scalia & Bryan A. Garner,
 Reading Law: The Interpretation of Legal Texts 93 (2012)......................5, 7, 13

Bradley Schaufenbuel, Revisiting Reader Privacy in the Age of the E-Book,
 45 J. Marshall L. Rev. 175, 182 (2011) ......................................................5

James C. Scholtz, Developing and Maintaining Video Collections in Libraries
(ABC-Clio, Inc., 1989) ............................................................................................................ 14

S. Rep. No. 100-599 (1988) ........................................................................................................ 11

Rickie Sonpal, Old Dictionaries and New Textualists,
71 Fordham L. Rev. 2177 (Apr. 2003) ................................................................................ 13

The Library Board of Rhode Island, 220 RICR 060-15-3 .......................................................... 14, 15

While seeking to give an impression of seriousness, Plaintiff's Objection to Defendants' Motion ("Opposition" or "Opp.") is a shell game. Plaintiff attempts to sustain a class action based on a statute, R.I. Gen. Laws § 11-18-32 (the "RI VRPA"), which, by its plain words, simply does not apply to magazine publishers like Defendants Time Inc. ("Time") or Meredith Corporation ("Meredith") (collectively, "Defendants"), or the other publishers (Consumer Reports, Trusted Media, and Hearst) that Plaintiff's counsel has also sued. Instead, like the federal "Video Privacy Protection Act" ("VPPA"), the RI VRPA's plain text covers only video and audio material; it does not include publications. Plaintiff's entire position involves avoiding this simple fact and asking this Court to redraft the statute 30 years later to add the term "publications" to the plain text. That is fundamentally impermissible.

If that were not enough, it is *undisputed* that the RI VRPA was amended prior to passage to specifically *remove* "publications" from its scope. So not only does Plaintiff want this Court to add terms to the statute, she wants the Court to add terms that the legislature expressly took out, and thereby envelop entire industries within the penalty provisions of this statute when the legislature made the *opposite* decision. Notably, Plaintiff failed to disclose to the Court, in her initial and Amended Complaints, the original bill, which shows that the legislature deliberately took "publications" out of the statute's purview. Now, caught hiding that ball, Plaintiff resorts to a series of absurd and misleading arguments trying to re-import "publications" back into the text.

Plaintiff's Opposition arguments reflect a tortured reading of the statute to avoid the obvious. She places unmerited significance on the words "library" and "book store" and unsustainable weight on "or the like" to speculate an intent to reach the written material Plaintiff wants the statute to include, all the while ignoring that the legislature would have simply left "publications" in the text of the statute if that is what it intended. The legislature decidedly did not

do that.  The text is controlling; and while the legislature did not clean up the Act's heading, there could not be a more definitive indicator of the Act's intended scope than purposefully removing "publications" from the text.  The Rhode Island legislature—just like Congress and all states other than Michigan that passed similar laws—chose not to include publications or other written materials.  Plaintiff cannot second-guess that valid legislative choice.

Nor does Plaintiff's suggestion that the RI VRPA's inclusion of "libraries" and "book stores" (in addition to "video stores or record and cassette shops") as places where video and audio material can be obtained support her counterfactual reading that the statute covers publications. The fact is, the RI VRPA clearly contains two separate phrases, one defining the media it covers— video and audio—and one defining the types of establishments where they may be obtained. Plaintiff seeks to erase that distinction, stating that because the statute covers video and audio materials obtained from libraries and bookstores it must also cover books and magazines obtained from libraries and bookstores.  Notably, libraries and book stores offer videos and audiovisual materials, and did so in the 1980s when the Rhode Island legislature enacted the statute.  The fact that libraries and book stores purvey written materials is irrelevant, as is the fact that book stores sell board games, video stores sell posters, and record shops sell stickers.  The plain text of the RI VRPA makes this clear.  The Act does not cover the sale of board games, posters, stickers, or written materials; it only covers audiovisual materials.

The simplest answer is correct, or to paraphrase how this Court once put it, "[t]here can be little doubt that had the General Assembly deemed it appropriate or necessary" to include publications in the RI VRPA, "it would have expressly done so," rather than leaving it to courts and potential defendants to divine meaning in the trail of purported clues Plaintiff points to. *Hauser v. R.I. Dep't of Corr.*, 640 F. Supp. 2d 143, 146 (D.R.I. 2009).  Particularly where, as

2

here, the Act carries criminal penalties, the legislature must speak plainly, which it did.  Plaintiff is attempting to dance around the obvious.

At the end of the day, Plaintiff cannot dispute that the legislature deleted publications from the Act *because it intended to delete publications*.  Faced with the obvious, Plaintiff's only response to the deletion—namely the absurd speculation that the legislature deleted "publications" from the text in order to *expand* the statute to cover "unpublished" written "manuscripts" or perhaps that the legislature didn't even read the text of the statute (Opp. at 18-19)—illustrates just how ridiculous Plaintiff's position, and this whole lawsuit, really is.  While Plaintiff accuses Defendants of speculating as to legislative intent—badly misstating case law in the process—it is Plaintiff's claims that depend on layers of speculation and sheer nonsense.

This action ignores the plain language of the statute, its legislative history and every applicable principle of statutory construction.  It should be dismissed with prejudice.

## THE UNCHALLENGED BACKGROUND TO THIS MOTION

At the threshold, it is important to note the background pertinent to this Motion that Plaintiff does not challenge in her Opposition:

- The RI VRPA must cover publications for this suit to proceed;

- The RI VRPA's plain text does not include publications—only "video films, records, cassettes, or the like" (R.I. Gen. Laws § 11-18-32(a));

- The RI VRPA's enumerated list of materials are all audiovisual materials;

- Where a statute's text is "clear and unambiguous, the inquiry is at an end" (Opp. at 11-12, citing *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 8 (1st Cir. 2007));

- The federal VPPA, which was passed in the wake of the disclosure of Judge Bork's video rentals in a newspaper, prohibits the disclosure of video rental records;

3

- The VPPA initially included certain written materials, but Congress removed written materials from the final bill (Opening Br. at 4 n.3);

- Similarly, as originally introduced, R.I. House Bill 88-H 8170—the bill enacted as the RI VRPA—included the word "publications," but in one of several substantive and material changes, the Rhode Island legislature deliberately removed the word "publications" in the final enactment (Opening Br. at 3-4 & Ex. 1);

- Plaintiff *did not mention* this dispositive portion of the legislative history in her Complaint or Amended Complaint, but pointed instead only to an "Explanation of the Legislative Council" ("Explanation") (Am. Compl. ¶ 18)[1];

- On its face, the Explanation does not accurately reflect the changes made to the bill as passed (Opening Br. at 9 & n.8);

- While Plaintiff places great emphasis on the phrase "or the like," she does not dispute that "or the like" was part of the original bill that included "publications," and thus could not possibly have been intended to capture the omitted "publications" (Opening Br. at 14-15);

- The Southern District of New York, which is the only court to address the matter, found, after reviewing the RI VRPA and other state "mini VPPA" statutes, that Michigan's

---

[1]  The Explanation is created by the Legislative Council to "advise the general assembly."  R.I. Gen. Laws, § 22-8-1.  The Legislative Council is not a constitutional actor, and its "Explanations" are of little value as legislative history, and of no value where, as here, they contradict a statute's final text—as well as its drafting history.  *See* Opening Br. at 8-9 & n.7, citing, *e.g., United States v. M.I.M.*, 932 F.2d 1016, 1020 (1st Cir. 1991).  Plaintiff attempts to distinguish *M.I.M.* on the ground that the Senate Report at issue there "actually contradicted the statute."  Opp. at 14 n.7.  However, Plaintiff ignores that the Explanation too contradicts the RI VRPA as it inaccurately recites the effective date, incorrectly notes the civil penalty without mention of the potential criminal penalty, and, most importantly, fails to reflect the removal of "publications" from the statute's text.  *See* Opening Br. at 9.  Accordingly, like in *M.I.M.*, the Court "surely must apply the statute rather than the [Explanation]; after all, it is the statute, not the [Explanation], that was enacted by [the Legislature]."  *M.I.M.*, 932 F.2d at 1020.

4

Personal Privacy Protection Act ("PPPA"), M.C.L. § 445.1712, *et seq.*, is "*the only statute that restricts disclosure by sellers of written materials in addition to sellers of videos and sound recordings.*"  *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 447 n.13 (S.D.N.Y. 2016) (emphasis added).[2]

The unchallenged facts and governing law set forth in Defendants' Opening Brief and below lead ineluctably to one conclusion:  this action should be dismissed with prejudice.[3]

## ARGUMENT

### I.  Plaintiff's Reading of the RI VRPA to Encompass Publications Impermissibly Expands and Rewrites Plain Text

"The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it."  Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012).  Plaintiff does not, and could not, dispute that "[i]t is not the function of the Court to add language to an otherwise clear and unambiguous enactment."  *State v. Fuller-Balletta,* 996 A.2d 133, 143 (R.I. 2010); *see also Orthopedic Specialists v. Great Atl. & Pac. Tea Co.,* 388 A.2d 352, 354 (R.I. 1978) (court will not "interpolate into the Act by statutory construction a provision which the Legislature has not expressly included").  "A court's duty is to construe a statute, not to redraft it."  *Reid v. Citizens Sav. Bank/Citizens Trust Co.,* 887 F. Supp. 43, 46 (D.R.I. 1995).

---

[2]  Plaintiff does not dispute this, but disparages the district judge's comprehensive review of the state "mini-VPPA" statutes as "unpersuasive, out-of-context dicta" (Opp. at 10 n.4)—while apparently finding an offhand remark in a law review note by a recent law school graduate more "persuasive."  *Id.* at 9-10, citing Bradley Schaufenbuel, Revisiting Reader Privacy in the Age of the E-Book, 45 J. Marshall L. Rev. 175, 182 (2011).

[3]  The same Plaintiff's counsel who brought these actions against Defendants filed virtually identical class action complaints in this Court against magazine publishers Consumer Reports, Inc., Trusted Media Brands, Inc., and Hearst Communications.  *See, e.g., Watterson v. Consumer Reports*, No. 18-cv-00513; *Watterson v. Trusted Media Brands*, No. 18-cv-00520; *Lachapelle v. Hearst Commc'ns, Inc.*, No. 18-cv-00534.  Those actions have been designated as "related cases."

Thus, in *Vaudreuil v. Nalson Engineering & Construction Co.,* the legislature removed certain impediments to recovery on a labor and material bond—but "ma[de] no mention" of the statute of limitations.  399 A.2d 1220, 1222 (R.I. 1979).  "In the face of this evident, but calculated, omission," plaintiff's request that the court assume the legislature meant to include the limitations period too, "asks us not to construe the statute but to redraft it. . . . That is a function reserved to the Legislature; had the legislators chosen to address the matter, they could have easily done so."  *Id.* (citing *Estate of Eglee*, 383 A.2d 586, 588 (R.I. 1978)).

Here, the RI VRPA's plain text covers only "video films, records, cassettes, or the like" (*i.e.*, only video and audio material); it does not extend to publications.  Including publications would redraft the statute to add terms.  That is not allowed.  The statute cannot be rewritten, by a court, 30 years later, to extend to publications and bring into its embrace entire industries (*i.e.,* magazine publishing, newspaper publishing and book publishing) that could not possibly have been subject to, or regarded themselves as subject to, this statute given the statute's plain text.  If Plaintiff wants the statute to be rewritten to cover publications, she can ask the legislature to do so, but it is "clearly inappropriate" for her to ask the Court "to create such a right by judicial fiat." *Hauser*, 640 F. Supp. 2d at 146; *State v. DelBonis*, 862 A.2d 760, 768 (R.I. 2004) ("No authority exists for this Court . . . 'to supplement or to amend a statute enacted by the General Assembly.'") (internal citation omitted).

Unable to overcome the statute's plain text, Plaintiff simply ignores that reality, asserting that the "plain text makes clear that the [RI VRPA]'s privacy protections extend to written materials, such as books and magazines."  Opp. at 4.  But Plaintiff does *not* rely on the plain text. Instead Plaintiff tries to tease that conclusion from the heading and what she sees as implications

from other language in the statute.  As a matter of law, Plaintiff's contrivances cannot create what is not there.

A.    **The Act's Heading Cannot Take the Place of Statutory Text**

The Act's heading ("Video, audio and publication rentals")—which does not accurately reflect the bill that was actually passed—is not the statute.  Statutory text controls over, and cannot be expanded by, anything in the heading or title of the enactment.  This is obvious. "Headings and titles are not meant to take the place of the detailed provisions of the text" and "cannot undo or limit that which the text makes plain."  *Passa v. Derderian,* 308 F. Supp. 2d 43, 58 (D.R.I. 2004) (quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.,* 331 U.S. 519, 528-29 (1947)); *see also Orthopedic Specialists.,* 388 A.2d at 355.  Yet that is what Plaintiff would prescribe.

Plaintiff does not address any of this authority in her Opposition.  She cites cases stating that resort to headings is a "tool[] available for the resolution of a doubt about the meaning of a statute" "[w]hen there is doubt as to [its] meaning."  Opp. at 12-13 (citations omitted).  There is no "doubt" that the statute omitted publications.  They cannot be added back in by reference to the heading, which clearly did not keep up with the substantive changes to the bill language.[4]  Scalia & Garner, *supra*, at 222 ("a title or heading should never be allowed to override the plain words of a text").

With the Act's heading unable to do the job, Plaintiff spends much of her Opposition trying use the phrase "or the like" (in the statute's recitation of "video films, records, cassettes, or the

---

[4] *Cf. Chickasaw Nation v. United States,* 534 U.S. 84, 92 (2001) ("It is far easier to believe that the drafters . . . unintentionally failed to remove what had become a superfluous . . . cross-reference . . . "). Here, the legislative history makes clear that both the heading and Explanation were based on an earlier version of the bill, and did not evolve and were never cleaned up even as the text of the bill itself changed. *See* discussion in Opening Br. at 3, 8-9.

7

like") to supply the coverage for publications that the legislature declined to provide.  As shown below, that gambit fails too.

### B.      "Or the Like" Cannot Sweep Written Materials into the Statute

Plaintiff acknowledges that under the doctrine of *ejusdem generis*, "where a series of specific terms in a statute is followed by a general term . . . the general term will be construed to embrace only additional examples of a similar nature as those enumerated." Opp. at 21-22 (quoting *First Republic Corp. of Am. v. Norberg*, 358 A.2d 38, 41 (R.I. 1976)).  *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 115 (2001) ("contracts of employment of seamen, railroad employees, or *any other class of workers* engaged in foreign or interstate commerce" held to include *only* transportation workers; the general residual clause was "controlled and defined by reference to the enumerated categories of workers which are recited just before") (emphasis added).

Here, the general residual term "or the like" cannot be read to add written publications because they are not "of a similar nature" to those items the statute specifically recites: "video films, records, [and] cassettes."  Plaintiff concedes that each of the enumerated materials are "audiovisual materials" (Opp. at 4, 6, 9, 22; Am. Compl. ¶ 24) without further wrestling with the plain fact that publications (including books and magazines) are not audiovisual in character. The specified audiovisual media do not "possess the same essential characteristic[s]" as printed publications.  *Deckers Corp. v. United States*, 532 F.3d 1312, 1316 (Fed. Cir. 2008).  Here the essential characteristic of the terms preceding "or the like"—"video films, records, cassettes"—is their audio, visual, or audiovisual quality.  Indeed, given that at the time of enactment, audiovisual technology was rapidly changing (*e.g.,* from Betamax to VCR, then later from DVD to Blu-Ray; and vinyl albums to cassettes to CDs, etc.), these actually "like" media were what the legislature was obviously attempting to capture by including "or the like" in the Act.

Just as *Deckers* held sports sandals were not included in a provision covering "tennis shoes, basketball shoes, gym shoes, training shoes and the like"—even though they were all types of shoes (*id.* at 1316)—and *Estate of Eglee* held that "burning" and "tearing" were not "mode[s] of destruction" of the "same kind or nature" as "canceling" or "obliterating" (383 A.2d at 589), the types of video and audio media the statute specifies ("video films, records, cassettes") would be "like" newer audiovisual technology (DVDs, CDs, Blu-Ray discs), not "like" books and other written material. Applying the phrase "or the like" to written publications would go beyond the class of media—audiovisual materials—specifically enumerated in the RI VRPA to encompass entirely different classes of media.[5]

Plaintiff does not dispute, nor could she, that the original version of the Act included the phrase "or the like," even when "publications" was included in the list. Then "publications" was specifically removed from the statute, while the phrase "or the like" remained. *See* Opening Br. at 3-4 & Ex. 1. This completely undermines Plaintiff's argument for a broad reading of that phrase that would recapture publications. It does not stand to logic or reason under these circumstances that "or the like" was intended to include or does include publications, an expressly removed category of material. In *Eglee*, the legislature deleted the words "cancelling" and "obliterating" and *substituted* the general residual phrase "otherwise destroying." 383 A.2d at 588-89. Yet, the court held that if "the Legislature had intended that the term 'otherwise destroying' were to include

---

[5] Plaintiff cites *State v. Dearmas*, 841 A.2d 659 (R.I. 2004), applying the related doctrine of *noscitur a sociis* (Opp. at 5), but that case only highlights her error. Reading the phrase "other tangible objects" with the preceding words "documents," "books," and "papers," the *Dearmas* court concluded that "blood samples" were "simply not an additional example of a tangible object 'of a similar nature as those enumerated'. . . ." 841 A.2d at 667-68. Plaintiff's attempt to use "or the like" to cover written material despite the inherent audiovisual qualities of the other items in the list, is similarly untenable. *See also Gustafson v. Alloyd Co.,* 513 U.S. 561, 575-76 (1995) (applying the doctrine of *noscitur a sociis,* reaching the conclusion that the word "communication" referred only to public communications, rather than any communication, because it appeared in a list of other words—notably "notice, circular, [and] advertisement," making it "apparent that the list refer[red] to documents of wide dissemination").

revocation by cancellation or obliteration," *it would have used those terms in addition to* "otherwise destroying." 383 A.2d at 589. *A fortiori* here, where the general phrase was in the statute all along, to use that phrase to re-import publications would contravene legislative intent. Tellingly, Plaintiff's Opposition nowhere acknowledges, much less discusses, this critical fact.

Instead, Plaintiff tries to make it seem absurd that the statute would include the film or audio book versions of "To Kill A Mockingbird," but not the print version; "They share the same title, and they tell the same story, *just through different media*." Opp. at 9 (emphasis added). But it is Plaintiff's argument that is absurd. Suffice it to say, "just through different media" is doing a lot of work in that sentence, since the statute, by its clear terms, does not try to encompass all media—only some. The issue elided by Plaintiff is whether the audiovisual media listed in the statute are "like" print publications. They are not. The legislature clearly knows exactly how to write legislation sweeping in all communications media,[6] and it did not do so here. *See Hauser*, 640 F. Supp. 2d at 145-46.

Contrary to Plaintiff's plainly erroneous contention, it is not the title or content of "To Kill a Mockingbird" that leads to the statute's protection—it is the format. Titles of video and audio recordings are protected. Titles of books, magazines, plays, operas, and ballets are not. For example, if a Rhode Islander accessed Telecharge.com to buy tickets for the current production of "To Kill a Mockingbird" on Broadway, the RI VRPA does not prevent that information from being disclosed. Notwithstanding that it is the same title and same story in both instances—and, indeed, a theatrical presentation of "To Kill a Mockingbird" is in certain respects more similar to a video

---

[6] For example, Plaintiff cites the definitions from Rhode Island's "Son of Sam" statute barring criminals from commercially exploiting their crimes. Opp. at 6. In stark contrast to the RI VRPA's specification of *particular* media, that statute sweepingly applies to "*any medium of communication* . . . includ[ing], but . . . not limited to, a movie, book, magazine or newspaper article, tape recording, still photograph, radio or television program, live presentation, or reproduction or presentation of any kind." R.I. Gen. Laws § 12-25.1-2(3) (emphasis added).

presentation of it than is the book version—the RI VRPA covers formats and does not extend to the live theater format any more than to the book format.

Moreover, far from odd or unprecedented or, as Plaintiff tries to suggest, absurd, drawing distinctions among media formats is *precisely what the federal VPPA did*—along with every state statute that followed the VPPA.  The VPPA was prompted specifically by the controversy surrounding publicity given to Judge Bork's *video rental* history.  S. Rep. No. 100-599, at 5 (1988).  Even though Congress considered a similar protection for all library borrower records (which would have encompassed books and other publications, not just videos), "recognizing that there is a close tie between what one views and what one reads," Congress decided to limit the legislation to video records.  *Id.* at 8.  Neither Congress nor the Rhode Island legislature was obligated to go further.[7]

Thus, Plaintiff's attempt to enlist the VPPA to support her reading of the statute[8] falls flat; the bottom line is that Congress made a valid legislative choice not to include written materials— and Rhode Island did exactly the same thing.  *See Diamond v. U.S. Agency for Int'l Devel.*, 108 F.3d 312, 316 (Fed. Cir. 1997) ("courts should assume that Congress was aware of the distinctions it was making and that it intended to make those distinctions").

---

[7]  *See, e.g., Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) ("The legislature may select one phase of one field and apply a remedy there, neglecting the others."); *Hazard v. Howard*, 290 A.2d 603, 606 (R.I. 1972) ("whether this statute is wise or unwise . . . would better be addressed to the General Assembly which, under our system of government, is charged with the duty and responsibility of passing on the wisdom of such legislation").

[8]  Plaintiff observes that when the VPPA was amended to remove written material, Congress also removed the words "books" and "libraries," but when the RI VRPA was amended to remove "publications," the words "book stores" and "libraries" remained in certain places.  Opp. at 10-11. Plaintiff's observation ignores that videos, records, and cassettes can be obtained from book stores and libraries.  Thus, including those venues could not serve to re-import publications after the legislature removed them from the statute.  *See* discussion *infra*, section I(C).  Further, the federal VPPA clearly covers videos sold at "book stores" and others in the business of distributing video materials.  *See, e.g., Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-cv-4570, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017).

In short, if the legislature intended the RI VRPA's privacy protections to extend to written materials like books and magazines, it would have been exceptionally easy for it to say "written materials" or "publications" or "any medium of communication" (as it did in the Son of Sam statute)—not speak in riddles, deleting "publications" and hiding its intention in the "or the like" phrase.

C.   **Reference to "Libraries" and "Book Stores"—Where Audiovisual Material is Also Found—Cannot Expand the Statute's Reach to Include the Written Material That the Legislature Deliberately Removed**

Reaching further, this time deploying a complicated "visual aid," Plaintiff argues that, even though the legislature could have just left "publications" in the statute, its "inclusion of 'book stores' and 'libraries' . . . supports Plaintiff's reading that written materials are encompassed by 'or the like.'" Opp. at 8.  Again, this attempt to tap dance around plain text and meaning lacks merit. If it requires a diagram to explain what you think a statute says, then perhaps *that is not what it actually says*.  All Plaintiff's diagram illustrates is what the statute covers and what it does not— with publications solidly in the latter.  *Id.*

The statute mentions libraries and book stores in the context of cataloguing the places "video films, records, cassettes, or the like" may be obtained "from"—*e.g.*, "libraries, book stores, video stores, or records and cassette shops or any retailer or distributor of those products."  R.I. Gen. Laws § 11-18-32(a).  Those references do not serve as descriptors for the types of products covered by the RI VRPA.[9]  Nor do the location references indicate that the legislature "wanted to extend the [RI VRPA]'s privacy protections to written materials, such as books and magazines."

---

[9]  Under Plaintiff's unprincipled logic, anything one could obtain at a library or book store or any retailer would be covered.  Many other products are offered at those establishments, including candy, T-shirts, concert tickets, electronic devices, etc.  Clearly the legislature did not extend the Act's privacy protections to those items any more than it did to written materials such as books and magazines.

Opp. at 7.  Indeed, if that's what it "wanted" to do, *it would have done so.  See* Scalia & Garner, *supra*, at 94 ("What the legislature 'would have wanted' it did not provide, and that is an end of the matter.").

Sensibly read, the legislature included bookstores and libraries because, like the other venues identified in the statute, they are places where people may obtain video and audio material—and to make clear that the RI VRPA does not only cover establishments that *primarily* deal in video and audio media.  That reading does not render bookstores or libraries "nonsensical or superfluous" in the least.  Opp. at 8.  For Plaintiff's argument to even begin to make sense, it would have to be true that the Rhode Island legislature did not believe libraries and bookstores offered audiovisual materials when they enacted the RI VPRA.  But the library property destruction statute cited by Plaintiff (Opp. at 6, citing R.I. Gen. Laws § 11-44-15) included reference to "sound recordings" and "audiovisual material" in *1983*—five years *before* the legislature enacted the RI VRPA.  *See* P.L. 1983, ch. 296, §4.

Moreover, and, contrary to what Plaintiff asserts (Opp. at 7), it was well known that libraries and book stores in the 1980s, when the RI VRPA was enacted, in fact offered audiovisual materials.[10]  For example, the *Minimum Standards for Rhode Island Libraries*, approved and published in 1983 by the Rhode Island Department of State Library Services pursuant to R.I. Gen.

---

[10]  Plaintiff references some 1980s vintage dictionaries (Opp. at 7) but they do not purport to exclude video and audio material from the definition of "library"; the definition from the Oxford English Dictionary that Plaintiff selects contains the caveat "in various applications more or less specific," and among the alternative definitions is "[a] collection of films, gramophone records, music, etc."—citing the existence, in the 1970s, of BBC lending libraries for recorded music.  *See Library*, OXFORD ENGLISH DICTIONARY (2d Ed. 1989).  In any event, "a dictionary definition states the core meanings of a term.  It cannot delineate the periphery," and "[d]ictionaries tend to lag behind linguistic realities."  Scalia & Garner, *supra*, at 418-19; *see also* Rickie Sonpal, Old Dictionaries and New Textualists, 71 Fordham L. Rev. 2177, 2214 (Apr. 2003) ("[T]he absence of a particular definition in a dictionary should not be taken to indicate that that definition was not prevalent at the time the dictionary was published.").  Here, more important than any dictionary, as noted in text, is the Rhode Island legislature's understanding in 1983 that libraries contained sound recordings and audiovisual material.

Laws § 29-3.1-4(3), explicitly states that libraries contain "materials in the following formats. . . . *films; records/audio tapes; video tapes/discs*."  *Minimum Standards for Rhode Island Libraries*, Rhode Island Department of State Library Services 21 (1983) (emphasis added).

Contemporaneous publications in the public realm, subject to legislators' notice, confirm that both libraries and bookstores contained video and audio material in the 1980s.  *See, e.g.,* Roger R. House III, "Video Retailer Complains Library Rentals Are Unfair," *Providence Journal* (Apr. 3, 1985, p. D-01) ("Roy Langley, owner of Classic Video on Broad Street, believes the profits of local videotape retailers are being threatened by competition with the Pawtucket Public Library's new videotape rental service."); *see also* James C. Scholtz, DEVELOPING AND MAINTAINING VIDEO COLLECTIONS IN LIBRARIES (ABC-Clio, Inc., 1989); Garret Condon, "Bookstores Turn Page to Wider Sources of Income," *Hartford Courant* (June 17, 1985, p. C1-C2) ("The nation's two largest book chains, Waldenbooks and B. Dalton Booksellers, are increasingly turning their shelf and floor space over to magazines, computer software, and audiotapes and videotapes."); Patrick Reilly, "At Waldenbooks, more gets nod over discounting," *Crain's New York Business* (Mar. 10, 1986, p. 1) ("video cassettes are now available in every Waldenbooks outlet.  Video sales are expected to increase by 50% in 1986").[11]

Finally, Plaintiff opines that "the Library Board of Rhode Island . . . understands the [RI VRPA]'s plain text and purpose the same way Plaintiff does," arguing that its inter-library loan regulation "likens magazines, books, and journals to audiovisual materials by categorizing them as all 'library material[s].'"  Opp. at 9, citing 220 RICR 060-15-3, § 3.4(B)(1)-(2).  In reality, it does

---

[11]  "Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"  *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

the opposite.  The regulation identifies "books, CDs, magazines, DVDs, journals" each as a separate "category of material" found in the library.  220 RICR 060-15-3, § 3.4(B)(2).  Rather than likening them, the regulation distinguishes the categories of library materials from each other.  And, of course, the RI VRPA nowhere refers generally to "library materials"—it specifies *what* particular material is covered, *viz.*, video and audio.  Plaintiff can no more rewrite the RI VRPA to add language encompassing all "library materials" than she can re-import "publications" after the legislature took them out.

## II.   Unable to Distinguish Controlling Authority That Prohibits Plaintiff from Reading the RI VRPA to Reimport What the Legislature Took Out, Plaintiff Misstates the Law

There is simply no way to reasonably read the statute as intended to cover publications when they were expressly taken out of the statute, and Plaintiff's Opposition surely offers none.  Plaintiff has no response to the First Circuit's succinct statement of the law in *Acosta v. Local Union 26:* "Few principles of statutory construction are more compelling than the proposition that [the legislature] does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language."  895 F.3d 141, 144 (1st Cir. 2018) (internal quotations omitted).  The Rhode Island Supreme Court, U.S. Supreme Court and First Circuit have repeatedly applied this principle, which controls here.  *See* Opening Br. at 9-13 & n.9.

For example, in *Estate of Eglee*, a statute requiring the act of "burning, tearing, or otherwise destroying" could not be construed, through the phrase "otherwise destroying," to "include the acts of cancelling and obliterating"—where, as here, the legislature amended the statute to *delete* the words "cancelling" and "obliterating".  383 A.2d at 588-89.  That legislative history was dispositive of legislative intent.  *Id.* at 589.  Plaintiff's attempt to read "publications" back into the RI VRPA after it was taken out would likewise contravene "the obvious intent of the Legislature in drafting that statute."  *Id.*

Plaintiff's attempt to distinguish *Eglee* and several U.S. Supreme Court authorities on point fails—essentially just pointing out that the principle is enunciated in different contexts.  Opp. at 19-20.  That the subject matter of *Eglee* was a will contest and *Chickasaw Nation v. United States*, 534 U.S. 84 (2001) involved a tax exemption does not undermine the significance of those cases.[12]  *See also Vaudreuil,* 399 A.2d at 1222 (following *Eglee* in mechanic's lien case).

Worse, Plaintiff badly misstates the import of the few cases she cites in response—none of which distinguish, much less repudiate, the principle enunciated in the cases Defendants cited.  For example, Plaintiff quotes *Murphy v. Smith*, 138 S. Ct. 784 (2018) and *Mercy Hospital v. Rate Setting Commission,* 407 N.E.2d 337, 341-42 (Mass. 1980) as warning against "speculating" about the meaning of "the amendment process" and "especially when it appears on fair analysis of the final text that the [deleted] provision would have amounted to surplusage."  Opp. at 3-4, 18.  Certainly, the very term that Plaintiff stridently contends the statute encompasses—publications—can in no way be characterized as mere "surplusage."  To the contrary, as Plaintiff's lawsuit (and the related litigation) illustrate, this term would bring entire, unsuspecting industries within the Act via a counterfactual reading.

Notably, in a subsequent case, reaffirming the principle that deleting language from prior bills "is normally presumed to be intentional," the Massachusetts Supreme Judicial Court distinguished *Mercy Hospital,* because although in *Mercy Hospital*, there was "contemporaneous evidence that a particular provision was dropped because it was deemed surplusage . . . In this case, there is no contemporaneous evidence to support the plaintiff's claim that the provision was

---

[12]  To the extent Plaintiff argues that the statutes in these cases were subject to a strict or narrow construction, she ignores that this statute, which carries criminal penalties, is subject *to precisely such a construction*—and, indeed, to the rule of lenity, which requires that "penal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed," *State v. Smith*, 766 A.2d 913, 924 (R.I. 2001) (citation omitted), and constitutional vagueness prohibition.  *See* discussion *infra*, section III.

surplusage." *Green v. Wyman-Gordon Co.*, 664 N.E.2d 808, 812 & n.7 (Mass. 1996).  There is no indication of surplusage here either.[13]

Plaintiff also cites *Grasso v. Raimondo*, 177 A.3d 482 (R.I. 2018), for the proposition that "courts must be wary of placing much, if any, weight on drafting history."  Opp. at 16.  But *Grasso* in fact *made no such pronouncement*.  *Grasso* involved the state retirement system for police and firefighters; when the legislature amended the statute—rewriting and simplifying an entire section —the revised section did not include cross-references to other statutes that required consideration of whether or not the officer or firefighter was still disabled or was able to earn the same income from another source.  177 A.3d at 487-92.  Those statutory obligations were central to a "reasonable, fair, and harmonious construction" of the pension laws, and even after the amendment the two cross-referenced sections were still in effect and operative by their terms.  *Id.* at 491.  The court concluded that removing merely cross references as part of simplifying the statutory text did not portend what would be a radical change in pension policy.  *Id.* at 491-92.

Moreover, unlike *Grasso*, the statute at issue here does not stand for a scheme or broad purpose.  Whereas the *Grasso* court was tasked with interpreting an amendment to a single statutory provision in the context of a broader, complex statutory and regulatory scheme, Plaintiff's case relies on a stand-alone provision as originally enacted.  Plaintiff's unfounded suggestion that a statute directed to "video films, records, cassettes, or the like" nonetheless reflects the Rhode Island legislature's intent "to provide broad privacy protections to Rhode Islanders" (Opp. at 19)

---

[13]  In *Murphy,* the Court resolved the interpretive question based on the statute's text, and commented elsewhere in the same footnote quoted by Plaintiff that—unlike here—the amendments really did not shed any light on the question.  138 S. Ct. at 790 n.2.  In any event, *Murphy* supports Defendants' arguments in this case, requiring this Court to "carefully attend[] to the words [the legislature] chose rather than replacing them with others of [its] own."  *Id.* at 788.  Rather than heed the holding in *Murphy*, this is precisely what Plaintiff asks this Court to do—add words the legislature chose not to include in the RI VRPA.

finds no support in *Grasso* or any other case.  Rather, the legislature's decision to omit

"publications" from the RI VRPA can only be viewed as confirming the statute's plain text.

Indeed, Plaintiff's accusation of "impermissible speculation about the legislative process"

(Opp. at 2) is the ultimate irony.  Defendants' so-called "speculation" is that the legislature deleted

the word "publications" because it intended to delete the term "publications."  The true speculation

about legislative intent here is entirely Plaintiff's, saying for example that "as in *Grasso*,

understanding the [RI VRPA] to limit the statute's privacy protections to audiovisual materials

would require the Court to interpret the statute in a manner that does not follow the General

Assembly's intent and purpose. . . ."  *Id*. at 17-18.  What exactly is Plaintiff's evidence of a

legislative intent and purpose that will be thwarted if the RI VRPA—like the VPPA and almost

every other similar state statute—does not encompass publications?

According to Plaintiff, that purpose is "evident" from the statute's non-probative use of the

terms "book stores" and "libraries"; the heading (which did not delete the term "publications" to

keep up with the bill's amendments); and the Explanation (which similarly did not reflect the final

bill) (Opp. at 15)—but somehow *not* evident from the plain text of the RI VRPA and the deliberate

removal of the one word, "publications," that could have made that supposed purpose crystal clear.

As *Grasso* itself observed, "a legislature, in enacting statutes, is not wont to 'hide elephants in

mouseholes.'"  177 A.3d at 491 (quoting *Whitman v. Am. Trucking Assn's,* 531 U.S. 457, 468

(2001)).  Yet that is precisely what Plaintiff's tortured reading of the RI VRPA suggests the Rhode

Island legislature did here.

The simple fact is, *Plaintiff has no explanation for why the legislature would have removed*

*publications if its intent was not to exclude publications from the statute's scope.*  This is made clear

by Plaintiff's bizarre speculation that "it is more plausible that the General Assembly removed

reference to 'publications' to broaden the [RI VRPA]'s scope to cover all written materials, whether published or unpublished. . . ." including unpublished "manuscripts". Opp. at 19. The notion that the legislature took out publications because it was somehow *too confining* is unsupported.

Plaintiff muses that "there is no way to know if the voting legislators even considered that the prior draft of the bill included the word 'publications' in its text," and speculates that "[i]t seems far more likely that the voting legislators relied on the title of the [RI VRPA] and the accompanying Explanation to interpret the [RI VRPA] as extending its privacy protections to written materials, such as books and magazines." Opp. at 18. This is nonsense. The RI VRPA is essentially a one paragraph statute; the idea that legislators did not read the text or understand it belies belief. If "it is presumed that the General Assembly, when enacting a statute, is aware of earlier legislation," *Horn v. Southern Union Co.*, 927 A.2d 292, 296 (R.I. 2007), then certainly we can presume legislators read the text of the very bill put before them for passage, and if they had meant to include books or other publications they would have done so, not just relied on the title and Explanation. Opp. at 19.[14]

Plaintiff raises a similarly dubious argument in her attempt to distinguish *Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998) and *J. Truett Payne Company, Inc. v. Chrysler Motors Corporation*, 451 U.S. 557 (1981). Plaintiff argues these cases are inapposite because the legislature actively debated the discarded language in the prior drafts. Opp. at 20. However, nothing in the *Goncalves* opinion evidences that Congress, in fact, actively debated the relevant language regarding retroactivity. Rather, the court noted that the "conference committee emerged

---

[14]  Plaintiff argues that the Explanation's mistaken reference to publications "should be understood to clarify the meaning of 'or the like' . . . to include written materials, such as books and magazines." Opp. at 14. But as a matter of law, neither the Explanation nor the statute's heading, can "clarify" by displacing the actual text or reintroducing text that was intentionally omitted. *See* Opening Br. at 7-9.

with a compromise." *Goncalves*, 144 F.3d at 132.  This merely reflects the court's observation that Congress altered the language in the proposed bill; a fact that is equally observable with respect to the removal of "publications" from the text of the RI VRPA.  Moreover, "absence of evidence is not evidence of absence," *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 254 (D.C. Cir. 2013), and Plaintiff commits a logical fallacy by arguing that because the legislative history does not reveal active debate over the inclusion of "publications" in the RI VRPA, there must not have been any such debate.  We must assume that the legislature understood the changes made to the original bill, and Plaintiff cannot avoid the clear intent demonstrated by the removal of "publications" by calling into question the legislators' commitment to their duties.  Moreover, numerous courts that have concluded that elimination of language "strongly militates against a judgment that [the legislature] intended a result that it expressly declined to enact" without pointing to active legislative debate.  *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 199-200 (1974). *See also State of R.I. v. Narragansett Indian Tribe*, 19 F.3d 685, 700 (1st Cir. 1994); Opening Br. at 12-13 n.9.

Similarly dubious is Plaintiff's suggestion that the RI VRPA is "similar" to the Michigan PPPA (Opp. at 1 n.1).  Unlike the RI VRPA, the Michigan Act expressly included "written materials."  M.C.L. § 445.1712.  If the Rhode Island legislature meant to subject publishers to the RI VRPA's sweeping criminal penalties, it would have had to do so directly and unequivocally, as Michigan did.  Instead, the legislature made clear its intent was not to do so.  Reimagining the statute to write "publications" back in—contrary to what the legislature actually did—would create unintended, absurd and draconian, if not unconstitutional, results for an entire industry.  *See, e.g., Fontes v. City of Cent. Falls*, 660 F. Supp. 2d 244, 250 (D.R.I. 2009).[15]

---

[15]  Plaintiff also ignores the fact that courts have applied the PPPA strictly according to its terms and no further.  *E.g., In re Certified Question (Deacon v. Pandora Media)*, 885 N.W.2d 628, 633 n.16 (Mich.

### III.     Plaintiff's Reading of the Statute to Reimport Publications Contravenes the Rule of Lenity

Plaintiff does not dispute that the rule of lenity requires that "penal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed," *State v. Smith*, 766 A.2d at  924; or that "in deciding 'whether [a] defendant's conduct is within the ambit of the statute,' . . . we are also constrained by the 'constitutional requirement for certainty in penal statutes.'"  *State v. Carter*, 827 A.2d 636, 644 (R.I. 2003) (citations omitted).

Plaintiff instead incorrectly argues that these principles do not "apply to civil cases, like this case" (Opp. at 23), ignoring completely that the RI VRPA exposes Defendants to *criminal* sanction—fines and imprisonment.  R.I. Gen. Laws § 11-18-32(c).  The RI VRPA falls under Chapter 18 of Title 11 of the General Laws of Rhode Island, which covers Rhode Island's criminal offenses.[16]  Moreover, as it imposes criminal penalties, it is a penal statute.  *See Carter*, 827 A.2d at 643 (even though "the Domestic Violence Prevention Act is a salutary measure containing both remedial and prophylactic provisions, it is also a penal statute").  The U.S. and Rhode Island Supreme Courts have squarely rejected Plaintiff's suggestion that the rule of lenity does not apply because the statute is being construed "'in a civil setting,' rather than a 'criminal prosecution'":  the rule is one "of statutory construction whose purpose is to help give authoritative meaning to statutory language. It is not a rule of administration calling for courts to refrain in criminal cases from applying statutory language that would have been held to apply if challenged

---

2016) (dismissal "directed by the language of the PPPA" and if "there are some who believe that the law should direct a different result, those arguments should be addressed to the Legislature"); *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 123-24 (6th Cir. 2017) (PPPA "at retail" limitation had to be given effect).

[16] Other provisions in Chapter 18 of Title 11 outlaw filing fraudulent insurance claims (s*ee* R.I. Gen. Laws § 11-18-1.1), unlawfully transferring property with intent to defraud creditors (*see* R.I. Gen. Laws § 11-18-25), and selling tools designed to defraud the administration of a drug or alcohol test with the intent to defraud (*see* R.I. Gen. Laws § 11-18-33).

in civil litigation." *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 n.10 (1992);

*see also Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute

consistently, whether we encounter its application in a criminal or noncriminal context, the rule

of lenity applies"); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011)

("the rule of lenity can apply when a statute with criminal sanctions is applied in a noncriminal

context"); *Hunter v. Narragansett Elec. Lighting Co.*, 146 A. 624, 625 (R.I. 1929) (construction

of penal statute "must be the same whether the particular proceeding is to enforce a penalty or a

right in a civil action based on the statutory duty").[17]

Accordingly, Defendants "must be given the benefit of any reasonable doubt as to whether

the act charged is within the meaning of the statute," and expansively reading "or the like" to

encompass written material, as Plaintiff proposes, is contrary to law. *Carter*, 827 A.2d at 643-44

(statute defined crime of "domestic violence" as including, "but . . . not limited to," a list of

enumerated offenses; violation of a no-contact order was not among them and could not be swept

---

[17] Plaintiff's reference to *State v. Day*, 911 A.2d 1042 (R.I. 2006) is a red-herring. In that case, a seventeen-year-old was charged with four criminal offenses in Family Court. *Id.* at 1044. The government requested that the Family Court waive jurisdiction over the defendant so that he could be tried as an adult. *Id.* The Family Court granted the government's motion and the government indicted him for certain offenses that were different from the offenses for which he was waived by the Family Court. *Id.* The defendant contended that R.I. Gen. Laws § 14–1–7.1 prohibited the state from charging him with crimes different from those for which the Family Court found probable cause and that served as the basis for the waiver. *Id.* In support of this argument, the defendant urged the court to apply the rule of lenity in interpreting whether the Rhode Island Legislature intended for a waiver of jurisdiction under §§ 14–1–7 and 14–1–7.1 to constitute a complete waiver of personal jurisdiction, or merely a waiver of jurisdiction for the particular offenses for which the child was waived. *Id.* at 1047 n.6. The court refused to apply the rule of lenity because the waiver statute at issue was within Rhode Island's civil code and "deal[t] solely with waiver of the Family Court's jurisdiction over a child, not with the criminality of the conduct in question." *Id.* The court emphasized that the statute "neither describe[d] a criminally prohibited course of conduct, nor … prescribe[d] a punishment for a particular set of facts constituting a violation of the criminal code." *Id.* Here, the RI VRPA—which falls within Rhode Island's criminal code—describes a criminally prohibited course of conduct and prescribes a punishment for the very conduct underpinning Plaintiff's claims against Defendants.

in via the "broad, catchall phrase"); *Hunter*, 146 A. at 625 ("there is no justification in the judicial construction of such laws for any enlargement of a newly created penal offense by implication.")

## IV.     Plaintiff's Tag-Along Unjust Enrichment Claim Fails As a Matter of Law

Plaintiff concedes that her unjust enrichment claim must fail to the extent it arises solely from a violation of the RI VRPA.  *See* Opp. at 23-25 (calling *Casperson v. AAA S. New. Eng.*, No. PC 2014-6139, 2015 R.I. Super. LEXIS 149 at *31 (R.I. Super. Ct. Dec. 22, 2015) "inapposite because there, the plaintiff's claim for unjust enrichment was solely predicated on the statutory violation").  She instead tries to argue that the RI VRPA might "abrogate or supersede" common law.  *See* Opp. at 24-25.  That argument misses the point.  The issue is not that the RI VRPA abrogates common law, it is that Plaintiff may not recover in equity when she has affirmatively pleaded that there is an adequate remedy at law.[18]

Since Plaintiff cannot pursue a duplicative unjust enrichment claim arising solely from a purported breach of a statutory right, she instead argues that she has stated a claim because she has alleged, in essence, that she paid more for her subscription because of some unspecified non-statutory privacy protection.  But Plaintiff nowhere alleges, and could not claim, that Rhode Island recognizes any such protection outside of the RI VRPA—and her own pleading belies the notion that the claim is based on anything else, *see, e.g.*, Am. Compl. ¶ 89 (unjust enrichment allegation that "*because Defendants failed to comply with the [RI VRPA]*, [they] should not be allowed to retain" the full subscription amount) (emphasis added).

---

[18]  Furthermore, Plaintiff points to nothing in the RI VRPA affirmatively permitting her to pursue additional remedies (because there is nothing).  *See Multi-State Restoration, Inc. v. DWS Properties, LLC*, 61 A.3d 414, 419 (R.I. 2013) (permitting equitable claim to proceed where there was also a statutory remedy only because the "express language" of the statute "specifically allows for plaintiffs to pursue remedies in addition to those provided for in the . . . statute").

This Court has rejected precisely what Plaintiff attempts to do here: "advanc[ing] a statutory claim for right to privacy disguised as an unjust enrichment claim." *Wilson v. UTC Labs., LLC*, CA No. 15-101S, 2017 WL 9324759, at *5 (D.R.I. Apr. 27, 2017), *report and recommendation adopted*, 2017 WL 2438778 (D.R.I. June 6, 2017).  Presented with the very issue Plaintiff appears to raise—whether Rhode Island's courts would recognize a common law claim for unjust enrichment that arises out of a violation of the right to privacy—the Court held it would not, and that "Rhode Island's Supreme Court would . . . bar such a claim. . . ." *Id*.  To the extent Plaintiff's unjust enrichment claim is not based on violation of the RI VRPA, *Wilson* requires dismissal; to the extent it *does* purport to arise from a violation of the RI VRPA, the statute provides the appropriate remedy and *Casperson* requires dismissal.

Finally, even assuming, *arguendo*, both that Plaintiff's unjust enrichment claim rests on something other than a purported violation of RI VRPA, and that Rhode Island law would permit such a claim (which *Wilson* indicates it would not), the claim still must be dismissed because it suffers from fundamental pleading defects.  For example, it is not enough, as Plaintiff suggests, to allege that Defendants knowingly retained the "subscription fees."  Opp. at 26.  Rhode Island law requires that Plaintiff allege that Defendants knew that Plaintiff expected part of that subscription fee was meant to provide the privacy protections she alleges.  *See, e.g., Bisbano v. Strine Printing Co.*, 737 F.3d 104, 107 (1st Cir. 2013) (concluding that, based upon Rhode Island's substantive law, plaintiff must allege not only that he conferred a benefit on defendant, but "that the defendant knew of the benefit and appreciated it").[19]  She does not do so.  Further,

---

[19] Plaintiff's reliance on cases decided under Michigan law are therefore unavailing.  *See* Opp. at 25-26 (citing *Kinder v. Meredith Corp.*, No. 14–cv–11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014), *Perlin v. Time, Inc.*, 237 F. Supp. 3d 623 (E.D. Mich. 2017), and *Coulter-Owens v. Rodale, Inc.*, No. 14–12688, 2015 WL 575004 (E.D. Mich. Feb. 11, 2015)).  Although Defendants believe those cases were wrongly decided even under Michigan law, they are irrelevant to application of the controlling Rhode Island law principles in this case, for the reasons stated in text.  And indeed, other cases applying

nowhere does Plaintiff allege specific facts indicating how much of her subscription price is attributable to the unspecified privacy protection, or that she did not in fact receive the subscription she paid for.  There are no allegations (nor could there be) that Rhode Island subscribers pay a different price than others.  Her unjust enrichment claim is not plausibly alleged.[20]

Plaintiff has provided no basis on which this Court can sustain any claim for unjust enrichment on the facts alleged.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Amended Complaints should be dismissed in their entirety and with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).


Dated:   March 28, 2019                          Respectfully Submitted,

                                         ADLER POLLOCK & SHEEHAN P.C.

                                         By:  /s/ Elizabeth McDonough Noonan
                                               Elizabeth McDonough Noonan (R.I. Bar # 4226)

---

Michigan law support Defendants' position here.  *See, e.g., Coulter-Owens v. Time, Inc.,* Case No. 12-CV-14390, 2016 WL 612690, at *5 (E.D. Mich. Feb. 16, 2016), *aff'd,* 695 F. App'x 117 (6th Cir. 2017) (dismissing unjust enrichment claim premised solely on defendant's purported violation of Michigan VRPA).

[20] *See, e.g.*, *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) (rejecting unjust enrichment claim based on overpayment or "would not have shopped" theory because "Plaintiffs paid for burritos; Plaintiffs received burritos"); *Jurgens v. Build.com, Inc.,* 4:17-CV-00783-AGF, 2017 WL 5277679, at *7 (E.D. Mo. Nov. 13, 2017) (plaintiff failed to state unjust enrichment claim when she did not "allege any facts giving rise to a reasonable inference that any specific portion of the money she paid was intended or required to be spent on data protection"); *Austin-Spearman v. AARP and AARP Services Inc.*, 119 F. Supp. 3d 1, 14 (D.D.C. 2015) (concluding that plaintiff's "conclusory statements regarding [her] own beliefs and expectations [we]re not sufficient to support an alleged 'overpayment' injury'" where she "allege[d] that she paid for an AARP membership—*and also that she got one*," concluding that she "[did] not allege that she was denied any [AARP member benefits]; instead, she merely allege[d] that AARP's privacy protections were not as stringent as she believed they would be"); *In re Science Applications Int'll Corp. Backup Tape Data Theft Litig. ("S.A.I.C."),* 45 F. Supp. 3d 14, 30 (D.D.C.2014) (rejecting economic injury argument for Article III standing despite plaintiffs' suggestion that "some indeterminate part of their premiums went toward paying for security measures").

Michael A. D'Ippolito III (R.I. Bar # 9729)
One Citizens Plaza, 8th Floor
Providence, RI 02903
enoonan@apslaw.com
Tel:  (401) 274-7200
Fax:  (401) 351-4607


ZWILLGEN PLLC

By:    /s/ Jeffrey Landis
        Jeffrey Landis (*pro hac vice*)
        Zachary Lerner (*pro hac vice*)
        1900 M St. NW, Suite 250
        Washington, DC 20036
        Tel.: (202) 296-3585
        Fax: (202) 706-5298
        jeff@zwillgen.com
        zach@zwillgen.com

*Attorneys for Defendants*

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 28, 2019, I electronically filed the foregoing **REPLY MEMORANDUM OF LAW OF DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)** with the Clerk of the Court via the ECF system, which will send a notification of such filing to all counsel of record.

/s/ Jeffrey Landis
Jeffrey Landis